**POGAI FA`AOLA, Plaintiff**

**v.**

**TAVITA TAUMUA, and NATIONAL PACIFIC INSURANCE CO., Defendants**

High Court of American Samoa
Trial Division

CA No. 29-93

February 3, 1995

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
 For Defendants, Katopau T. Ainu`u

On or about November 27, 1991, plaintiff, Pogai Fa`aola (hereafter "Fa`aola"), was injured while crossing an access road behind the farmer's

market in Fagatogo. She claims that she was hit by a vehicle approaching from her left side. The vehicle, which belonged to the defendant National Pacific Insurance Co., (hereafter "NPI") was, at the time, driven by its employee, defendant Tavita Taumua (hereafter "Taumua"). Fa`aola seeks damages for personal injuries against Taumua, alleging negligence, and damages against NPI on a vicarious liability claim under the doctrine of *respondeat superior*.

Fa`aola testified that she was with a group of women who had traveled into town by bus and were dropped off at the sami side of the marketplace. After alighting the bus, she proceeded to cross the roadway toward the market after first ascertaining that there was no oncoming traffic. She further testified that while crossing the roadway, she was suddenly struck on her left side by Taumua's vehicle. As far as she knew, Taumua's vehicle came out of nowhere.

Taumua, on the other hand, claims that his vehicle was not even moving at the point of impact, and that Fa`aola had somehow fallen against his vehicle while it was stationary. He testified that he had taken the company vehicle out to get a haircut, and that downtown traffic at the time was rerouted through the marketplace due to some roadwork on the main highway. According to Taumua, traffic at the market was bumper to bumper, and his vehicle was actually stopped in traffic when he saw Fa`aola fall in front of, and attempt to grab at, his vehicle.

The driver's version of the events that day was corroborated by an independent eyewitness, Taimane Johnson (hereafter "Johnson"), who testified that she was at the market on the day of the accident selling her crops. She confirmed the driver's testimony that traffic was congested. She also testified that she was directly facing Fa`aola at the time, because she herself was intending to cross the road. Johnson testified that she saw Fa`aola suddenly go down as if she had stepped on the edge of her skirt or had tripped on something. This witness further averred that Taumua's vehicle was stopped at the time she saw Fa`aola fall, and that she felt compelled to intercede on the driver's behalf to explain to a group of people, who were menacing him, that Fa`aola was not in fact struck by Taumua's vehicle. Convinced that the driver had done no wrong, she offered at the scene that she was prepared to testify on his behalf.

After the accident, Fa`aola was transported to the LBJ Tropical Medical Center where X-rays revealed a lateral tibial plateau fracture as well as a fracture on the head of the smaller fibula bone. Dr. Vaiula Tuato`o, Chief of Surgery at the LBJ Tropical Medical Center, testified that he was one

116

of the surgical team that operated on Fa`aola's left knee on December 5, 1991. They found that the lateral aspect of Fa`aola's tibial plateau was not only fractured but also depressed; they further found torn cartilage at the knee joint. According to Dr. Tuato`o, the operation consisted of building up the depressed fractured plateau and restoring it to its normal position with the aid of four stainless steel pins (open reduction with internal fixation). At the same time, the torn cartilage was removed. The surgical team left alone the fractured fibula, however, as it had not been displaced.

Regarding causation, Dr. Tuato`o testified that the sort of fracture suffered by Fa`aola could only have resulted from a tremendous force; and that these fractures are either the result of direct trauma or a fall from a height such as would drive the femur bone down on the tibia breaking off one of its corners. In Fa`aola's case, it was the lateral or left side of the plateau that was broken and depressed. Dr. Tuato`o further related that, in his experience, these sorts of fractures have been automobile related, and that he could recall only one non-automobile case in which such an injury occurred. In that case, a basketball player, who had apparently jumped high and landed heavily on his foot, smashed the upper bone onto the lower resulting in a fracture similar to Fa`aola's injury.

## DISCUSSION

### A. Liability

### 1. Direct Liability Claim

Notwithstanding the corroborating eye witness account, the medical evidence suggests that Johnson was probably mistaken about the actual cause of Fa`aola's fall. Indeed, Johnson's attempt to explain Fa`aola's fall was conclusory, as she talked in terms of "as if" Fa`aola had tripped on something. Although she saw Fa`aola fall, she probably did not actually see what caused Fa`aola's fall. Significantly, the injuries that Fa`aola sustained and that x-rays revealed shortly after the accident cannot, on the medical evidence, be reconciled with the suggestion of a fall precipitated by tripping on something. Rather, Fa`aola's injuries are more consistent with those that result from a more severe impact with a moving vehicle--direct trauma to the left side of the knee, where Fa`aola's fractures were located. Furthermore, injury resulting from a fall forward after tripping is, according to Dr. Tuato`o, more likely to occur to the patella or knee cap area rather than to the lateral or outer side of the leg. In Fa`aola's case, there was no sign of injury to the patella or associated ligaments.

117

On the evidence, we find that Fa`aola sustained injuries as a result of being struck on her left leg by Taumua's vehicle. We find the defense's suggestion that the Fa`aola's broken bones were the result of tripping, coupled with a preexisting arthritic condition, to be medically unsupported and highly unlikely.

Given the extent of Fa`aola's injuries, and the medical evidence on the sort of force required to cause a depressed tibial plateau fracture, Taumua's vehicle must have been either moving too fast or accelerating suddenly, without due regard to the conditions of the road, traffic, and other attending circumstances at time. *See* A.S.C.A. § 22.0701 (prohibiting "careless and imprudent driving without due regard for the width, grade, curves, corners, traffic, or other attending circumstances"); *see also* A.S.C.A. § 22.0406 (imposing a general duty on drivers to "exercise due care to avoid colliding with any pedestrian upon any roadway"). We find the circumstantial evidence corroborative of Fa`aola's version, which we credit more weight, to preponderate strongly in favor of the inference that Taumua had failed to operate his vehicle with due regard to the congested and busy conditions of traffic at the relatively confined marketplace.

Accordingly, we conclude that Taumua was negligent in the operation of his vehicle and that his negligence was the proximate cause of Fa`aola's injuries. He is therefore liable to Fa`aola in damages.

2. Vicarious Liability Claim

With regard to Fa`aola's claim against the NPI, we find insufficient evidence to hold this defendant liable on the basis of the *respondeat superior* principle.[1] All Taumua could prove was the existence of an employer/employee relationship between NPI and Taumua; she failed to introduce any evidence whatsoever showing or tending to show that the

---

[1] NPI as the owner of the vehicle nonetheless had a statutory duty to insure its permitted drivers, against third party claims, pursuant to the requirements of the Compulsory Insurance Statute, A.S.C.A. §§22.2001 *et seq.* NPI's failure to so procure insurance would render it liable to plaintiff in an amount not greater than would be covered by insurance, if the duty to insure was not breached. *Foma`i v. Samana,* 4 A.S.R.2d 102, 109 (1987). We do not, however, address these issues as the court was not told anything of third party liability insurance, nor of failure on the part of NPI to procure such insurance.

118

tortious activity arose while the employee was going about in furtherance of the employer's business.

■ In general, "[i]f the servant steps outside of his employment to do some act for himself, not connected with the master's business, there is no more responsibility for what he does than for the acts of any stranger." PROSSER & KEETON ON TORTS, § 70 (5th ed. 1984). The record in the instant case contains a statement from the driver to the effect that he had taken the car out on a purely personal errand, to get a haircut, which is not in furtherance of the employer's business.

## B. Damages

Fa`aola at the time of the accident was 65 years of age. Her injuries required hospitalization for period of 22 days, and after her knee operation, she wore a leg cast for an extended period of time. Although her fractures have healed very well, according to Dr. Tuato`o, she continues to live with considerable pain and is regularly prescribed with pain medication. Her situation is aggravated by her obese condition and advanced osteoarthritis. She has a well-documented history of arthritic pain with her right ankle. While Dr. Tuato`o alluded to a number of scenarios with the sort of complications that have occurred in the past and might occur in the future with this sort of knee injury--for instance, lock knee, and/or total knee replacement--he merely spoke generally and did not, in our view, purport to give, with any degree of medical certainty, a prognosis of this particular patient. Fa`aola, however, will continue to live with pain indefinitely at a crucial weight bearing joint. According to Dr. Tuato`o, Fa`aola's favoring of this joint will result in over use of the other leg, and this in turn will result in the eventual deterioration of that other limb as well. We assess plaintiff's damages in the sum of $25,000.

On the foregoing, judgment will enter in favor of plaintiff Pogai Fa`aola against defendant Tavita Taumua in the sum of $25,000.

It is so ordered.